UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-14007-CR-MOORE/LYNCH(s)(s)(s)(s)

UNITED STATES OF AMERICA,

      Plaintiff,

v.

FRANK PIERRE,

      Defendant.

_____/

FILED by _____ D.C.

JAN 1 1 2010

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. PIERCE

REPORT AND RECOMMENDATION ON
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE DERIVED
FROM ILLEGAL ELECTRONIC SURVEILLANCE [D.E. #184] AND
SUPPLEMENT TO MOTION TO SUPPRESS EVIDENCE DERIVED
FROM ILLEGAL ELECTRONIC SURVEILLANCE [D.E. #285]

**THIS CAUSE** having come on to be heard upon the aforementioned motions and this Court having reviewed the motions, the government's response and the Defendant's reply, makes the following recommendation to the District Court:

    1.   This Court is going to refer to the Defendant's Motion To Suppress [D.E. #184] and the Supplement [D.E. #285] as the Defendant's "motion" without further description.

    2.   The Defendant's motion requests that this Court suppress all evidence resulting from the various wiretaps initiated in this case pursuant to orders entered by State Circuit Judges and by U.S. District Judge Marra of this Court. There are ten telephones which were targets of wiretap orders in this case and some of those wiretap orders had extensions granted as well.

    3.   Copies of all applications, affidavits and orders have been provided to the Defendant and this Court as stated in a footnote contained within the government's

response to this motion. This Court has reviewed all of these documents in respect to the Defendant's motion.

4.    The Defendant's motion does not specifically address the explicit conversations and/or targeted telephones which he seeks to be suppressed. This Court has reviewed each of the applications, affidavits filed in support of such applications, and orders as to each of these wiretaps. This Court will review for the District Court those telephones on which this Court has found intercepted conversations of the Defendant and telephones which were owned or possessed by the Defendant when they were named as targeted phones pursuant to a particular wiretap order. This Court will list each of the targeted phones, dates of the original orders authorizing the interception of the communications and the initial target named in each application. The targets named herein were all co-defendants in the initial indictment returned in this case. Specifically, Todd Jackson, Jr, Todd Jackson, Sr., Quentin Dixon and Jean Polanco are the individual co-defendants this Court refers to herein. This Court will not refer to each as "co-defendants" every time they are mentioned herein. Further, there are other persons named in each application which the application and affidavits go on to assert may be intercepted as well.

5.    The various applications and orders of the targeted phones are listed as follows:

a.    (772) 323-9189 alleged to be in the possession of Todd Jackson, Jr.; Order entered November 19, 2008. Two extensions of this intercept were granted on December 11, 2008 and December 17, 2008. This wire intercept order was entered by a State Circuit Judge in St. Lucie County, Florida.

2

b. (772) 323-3620 alleged to be in the possession of Todd Jackson, Jr.; Order entered November 19, 2008. Extensions of this intercept were granted on December 11, 2008, December 17, 2008, and January 15, 2009. This wire intercept order was entered by a State Circuit Judge in St. Lucie County, Florida.

c. (772) 216-2796 alleged to be in the possession of Quentin Dixon; Order entered November 25, 2008. Extensions of this intercept were granted on December 22, 2008 and January 15, 2009. This wire intercept order was entered by a State Circuit Judge in St. Lucie County, Florida.

d. (954) 628-6710 alleged to be in the possession of Quentin Dixon; Order entered December 3, 2008. One extension of this intercept was granted January 15, 2009. This wire intercept order was entered by a State Circuit Judge in St. Lucie County, Florida.

e. (321) 795-3772 alleged to be in the possession of Todd Jackson, Sr.; Order entered December 5, 2008. Extensions of this intercept were granted on December 17, 2008, and January 15, 2009. This wire intercept order was entered by a State Circuit Judge in St. Lucie County, Florida.

f. (772) 924-4408 alleged to be in the possession of the Defendant Frank Williams a/k/a Frank Pierre; Order entered January 23, 2009. Extension/amendment of this intercept was granted on February 16, 2009. This wire intercept order was entered by a State Circuit Judge in St. Lucie County, Florida.

g. (321) 482-2647 alleged to be in the possession of the Defendant Frank Pierre; Order entered March 12, 2009. One extension of this intercept was granted on April 10, 2009. This wire intercept order was entered by U. S. District Judge Marra.

3

h. (954) 638-0679 alleged to be in the possession of the Defendant Frank Pierre; Order entered April 10, 2009. One extension of this intercept was granted on May 8, 2009. This wire intercept order was entered by U. S. District Judge Marra.

I. (734) 274-7263 alleged to be in the possession of the Defendant Frank Pierre; Order entered May 8, 2009. This wire intercept order was entered by U. S. District Judge Marra.

j. (786) 274-9114 alleged to be in the possession of Jean Polanco; Order entered May 8, 2009. This wire intercept order was entered by U. S. District Judge Marra.

6.     This Court has reviewed each and every application, supporting affidavit and order as referenced above regardless of whether the Defendant has standing to object to a particular targeted telephone. The government indicates that the Defendant was not intercepted in respect to any of the wire intercepts on telephone number (772) 323-3620 nor on telephone number (772) 323-9189.

7.   The Defendant's argument alleges that the (772) 323-3620 targeted phone was in the possession of Todd Jackson, Sr. and was improperly entered by the State Court. This Court notes that the application, affidavit and order all reference that targeted phone was actually in the possession of Todd Jackson, Jr.   Nevertheless, this Court will go forward with the Defendant's allegations in respect to that targeted telephone as well as all of the other wire intercepts which the Defendant attempts to include within his analysis and argument.

8.     The Defendant alleges he is an aggrieved person since various phone calls were intercepted. He further argues that there is no probable cause in the applications and

4

affidavits submitted to the State Circuit Judge as well as Judge Marra in respect to these various wire intercepts. He argues that they merely contain "boilerplate recitations."

9.    The Defendant also argues in his motion that the affidavits indicate that normal investigative procedures have been tried and failed or reasonably appear unlikely to succeed. The Defendant argues that the information contained in that respect within each application and affidavit are insufficient under the applicable case law. Further, the Defendant argues that the recitals in the various affidavits submitted in support of the respective applications indicate several controlled buys, four confidential informants, seizures, traffic stops, and consensual phone intercepts. However, the Defendant argues that these investigative techniques were insufficient to satisfy the necessity requirement and justify jumping to the next step of seeking a wire intercept.

10.    The Defendant argues that the agents could have made arrests of the Defendant and co-defendants as well as seizures of contraband without the use of any of these wiretaps.  The Defendant alleges in a conclusory fashion that many "probable techniques" were not tried.  The Defendant argues in his motion that the affiants should have stated why other techniques would be unlikely to succeed.  Further, the Defendant argues that the investigation was proceeding successfully and did not necessitate any of the wire intercepts/wiretaps entered by the various courts in this matter.

11.    The Defendant's motion in conclusory and general fashion discusses these various wire intercept orders entered by the State Circuit Judge and Judge Marra. The Defendant argues that the orders entered by Judge Marra were based upon illegally obtained evidence tainted by the illegal State wiretaps previously issued by the State Circuit Judge.

5

12.    The Defendant argues that the State Circuit Judge in St. Lucie County, Judge Vaughn, exceeded his authority in issuing his order of January 23, 2009 authorizing a wire intercept of the Defendant's phone, (772) 924-4408. The Defendant argues that his phone was located in Broward County, outside the jurisdictional limitations of a State Circuit Judge in the Nineteenth Judicial Circuit. The Defendant argues that State Circuit Judge Vaughn had no authority to issue such an order authorizing a wire intercept of any electronic communications outside of the Nineteenth Judicial Circuit, which does not encompass Broward County.

13.    The Defendant argues that while the application for that particular wire intercept initially refers to the phone being in the possession of someone known as "Frank Williams" that the agents knew that this Frank Williams was actually the Defendant Frank Pierre living in Broward County. Further, the Defendant argues that the application and accompanying affidavit fails to set forth any traditional methods utilized to attempt to investigate the Defendant prior to resorting to a request for a wiretap.

14.    The Defendant then argues in summary fashion that all of his arguments apply equally to Judge Marra's orders because Judge Marra's orders were merely continuances of the previously entered State wire intercept orders and use information from those State Court orders which are tainted. Finally, the Defendant concludes in his motion that the agents had sufficient cause to arrest the Defendant before even seeking the wire intercept orders from Judge Marra referenced above.

15.    In its response, the government argues that the Defendant has no standing except as to those particular conversations in which he was a participant on a targeted phone other than one owned by him or targeted phones which were in the Defendant's

6

possession. Further, the government argues that there was more than sufficient probable cause in each of these applications whether they be ones presented to State Circuit Judge Vaughn or Judge Marra. The government argues that there were sufficient facts set forth in each of the applications establishing a narcotics trafficking organization operating in this area which extended to Broward County, where the Defendant was purportedly the source of the cocaine hydrochloride being distributed and trafficked here by what has been referred to as the Jackson organization.

16.   The government argues that State Circuit Judge Vaughn properly issued his January 23, 2009 State wiretap order since the targeted phone was owned by the Defendant and was a mobile cellular telephone. Further, the government argues that the application and affidavit sufficiently set forth information to so advise State Circuit Judge Vaughn. The government argues that the application sets forth information that the cellular telephone was using towers in various locations in Palm Beach, St. Lucie, and Orange Counties and that the phone was believed to be located within the 772 area code in St. Lucie County. Further, the government argues that the case law authorizes interception of a mobile device such as the cellular phone in question which may end up being used outside of the jurisdiction of the issuing Court.

17.   The government responds to the Defendant's motion indicating that during this investigation of the Jackson drug trafficking organization, a person using cell phone (772) 924-4408, which was the subject of State Circuit Judge Vaughn's January 23, 2009 order, appeared to be Jackson, Jr.'s supplier of cocaine hydrochloride. Monitoring of the previous wire intercepts on one of the Jackson, Jr. phones identified that source of

7

cocaine hydrochloride as the Defendant Frank Pierre and that the Defendant was overheard on wire intercepts speaking with Jackson, Sr. about the delivery of cocaine.

18.     The government also argues that on or about January 26, 2009, Quentin Dixon was arrested and agents seized three kilograms of cocaine from him on that date at a residence in Fort Pierce, Florida.  Dixon advised the agents at the time of his arrest that the cocaine was obtained from the Defendant. Shortly after that arrest, the Defendant apparently stopped using (772) 924-4408 and that state intercept was then stopped according to the government.

19.     Wire intercepts of calls with Jackson, Sr. and the Defendant reflected that the Defendant had more cocaine for distribution.  Subsequently thereto the federal wire intercept orders were entered by Judge Marra as referenced above in respect to other phones believed to be in the possession of the Defendant as well as co-defendant Polanco. Once the Defendant and Polanco were arrested, the wire intercepts were closed down and sealed.

20.     As referenced previously, the government asserts that the Defendant was never intercepted on target telephone (772) 323-3620 or (772) 323-9189 and has no standing in respect to those wire intercepts.

21.     The government argues that each and every application and affidavit for each of the wire intercepts referenced in this case sets forth information about the ongoing investigation including confidential informants used who have been previously proven to be reliable in prior dealings with government agents and CI dealings in prior drug transactions with the targets.  The government also references cellular telephone calls between certain sources of information and targets arranging for purchases of narcotics

8

as well as controlled buys from targets by CIs and undercover agents. The application and affidavits also include summaries of several intercepted telephone calls reflecting that the targets of this investigation were distributing cocaine in this area and using cell phones to do so.

22.     The government argues in its response that each application and affidavit sets forth sufficient information concerning "necessity" for the use of these wire intercepts prior to either State Circuit Judge Vaughn or Judge Marra entering orders in respect to those applications. Further, the government states that each application and affidavit sets forth specific details of the investigative techniques already used and why other investigative techniques appear to be unlikely to be successful and/or are dangerous. For example, the government asserts that cooperators had been unable to provide high level information on the Jackson organization and the location of stash houses where drugs were located. The government submits that the sources of information and CIs were not admitted to the close knit Jackson organization to a level which would allow them to know the Defendant Pierre or co-defendant Polanco who are purportedly the sources of the cocaine sold to the Jackson organization for distribution. Further, the government argues that surveillance was not successful and that there were counter-surveillance techniques being used by certain of the co-defendants and targets in this case.   Finally, the government argues that it need not exhaust all techniques, but only reasonably advise the courts where these applications were submitted that good faith has been utilized in the investigative techniques thus far and why further investigative techniques would not be successful. This Court will review the specifics of these investigative techniques later herein as taken from the applications and affidavits.

23.    As an alternative argument, the government argues that there is a Leon good faith exception which is applicable should this Court find that any of the applications, affidavits and subsequent orders authorizing wire intercepts were improperly issued. The government argues that to justify suppression under the applicable case law, there must be some evidence that the issuing judge was misled deliberately, that the judge abandoned his independent role, that the wire intercept was based on an affidavit so lacking in probable cause that reliance upon that was unreasonable, or that the warrant was facially deficient. The government argues in summary fashion that the Defendant's motion sets forth no such allegation to justify suppression of any of the wire intercepts.   The government states that the Defendant merely argues in conclusory fashion that there is just not enough "probable cause" without any specifics. The government takes exception to the Defendant's argument in his motion and states that the Defendant does not point out specifically what affidavits are false, what portions of the affidavits are false, or what statements submitted in support of any of these applications did not comply with the applicable case law and statutory authority under Florida and federal law authorizing these various wiretaps.

24.    The Defendant's reply admits that he cannot seek suppression of all conversations which occurred prior to him becoming an aggrieved person. The Defendant asserts that he is entitled to move to suppress any conversations of which he was a party or on a telephone device in his possession. He makes no specific reference as to what portions of which application and affidavit are "legally infirm" under any applicable statute and/or applicable case law.

10

25.     It is also interesting to note that in his reply, the Defendant does not respond to the government's argument that the Defendant does not make sufficient allegations to even be entitled to a Franks evidentiary hearing concerning the Defendant's motion. This Court will address that issue first in its analysis.

## ANALYSIS

26.     This Court must first address the Defendant's request for an evidentiary hearing set forth at the end of his motion. The government challenges the Defendant's right to an evidentiary hearing and asserts the reasons why the Defendant has not made sufficient allegations nor proffers to justify even setting an evidentiary hearing. The Defendant does not even address this issue in his reply.

27.     The Defendant does not allege with any specificity whatsoever that there was any information provided by agents in any of the applications and affidavits for any of the wire intercepts which was based upon deliberately false information or recklessly obtained false information. In reviewing the motion there is absolutely no allegation of a deliberate falsehood by any of the agents in respect to any of the applications. There is no proffer of specific evidence that any affidavit and application contained false or deliberately misleading statements. Therefore, the Defendant is not entitled to an evidentiary hearing and this Court will rule upon the motion and supplement based upon the pleadings as now framed by the parties. Franks v. Delaware, 439 U.S. 154 (1978) and United States v. Cross, 928 F.2d 1030 (11th Cir. 1991). See also United States v. Gonzalez-Perez, 283 Fed. Appx. 716 (11th Cir. 2008).

11

28.    This Court must next address the issue of standing and which wire intercept orders the Defendant is entitled to challenge. The federal wire intercept statute under Title 18, United States Code, Sections 2510, et seq., and Florida Statute Chapter 934 govern the issues raised by the Defendant and the government herein.    Those statutory provisions are virtually identical. Neither the Defendant nor the government cites to any specific differences concerning the statutory framework of either statute. Federal law governs the admissibility of evidence in this proceeding whether the evidence is derived from state wire intercept orders or derived from orders entered by Judge Marra.

29.    The Defendant is considered an aggrieved party and has standing to challenge any of the wire intercepts in question to which he was a party to any intercepted wire, oral or electronic communication or was a person against whom the interception was directed. This includes any person on whose premises the intercepted conversation took place. United States v. Kelley, 140 F.3d 596 (5th Cir. 1998) and In re Grand Jury 86-3 (Miami), 673 F.Supp. 1569 (S. D. Fla. 1987).

30.    The government asserts that the Defendant was not intercepted at any time in respect to the targeted phones  (772) 323-9189  or  (772) 323-3620.  The Defendant in his reply has not specifically challenged that assertion by the government. This Court has independently reviewed each of the applications and affidavits herein and finds no reference to the Defendant having been intercepted on either of those targeted telephones. As a result, this Court finds that the Defendant has not established standing to challenge the applications, affidavits and subsequently entered orders in respect to those two targeted phones. Later herein when this Court analyzes the probable cause and necessity arguments made by the Defendant, this Court will include the applications, affidavits and

12

orders entered in respect to these two targeted telephones out of an abundance of caution should the District Court later determine that there is standing for the Defendant to challenge these wire intercept orders. However, at this time, the Court will immediately move on to the remaining wire intercept orders and targeted telephones where it is believed the Defendant was either intercepted in telephone conversations with co-defendants or was the actual person in possession of a targeted phone.

31.     Based upon this Court's review of the applications, affidavits and orders, this Court believes that the Defendant was intercepted on targeted phones of Quentin Dixon, (772) 216-2796 and (954) 628-6710. Obviously, the Defendant has standing and this Court will analyze the applications and affidavits for the phones alleged by the government to have been in the Defendant's possession which were targeted numbers (772) 924-4408, (321) 482-2647, (954) 638-0679, and (734) 274-7263. This Court cannot find any reference that the Defendant was intercepted on the targeted telephone of Todd Jackson, Sr., (321) 7995-3772 nor the targeted telephone of co-defendant Jean Polanco, (786) 274-9114. Nevertheless, this Court will again analyze those applications and affidavits as well just in case the District Court disagrees and finds that the Defendant has standing in regards to those targeted  phones.

32.     The target number (786) 274-9114 purportedly in the possession of Polanco was the subject of the last application made for wire intercept on May 8, 2008 along with a request for an extension on the Defendant's phone (954) 638-6079 and application for order on Defendant's phone (734) 274-7263. As a result, this Court does not have information subsequent to the issuance by Judge Marra of the wire intercept orders in respect to the Polanco phone, the extension of one of the Defendant's targeted phones,

13

and the other targeted phone referenced above. There is no way for this Court to know whether or not the Defendant was actually intercepted on the Polanco wire intercept and there is nothing in the pleadings from either the Defendant or the government which would indicate one way or the other. Therefore, out of an abundance of caution, this Court will continue its analysis based upon this Court's finding that the Defendant does not have standing relating to the Polanco wire intercepts. However, this Court will analyze that wire intercept order as it will all the others herein should it be later determined that the Defendant was, in fact, intercepted on that wire intercept.

## TARGET PHONES (772) 323-9189, (772) 323-3620, (321) 795-3772, (786) 274-9114

33.     These four targeted telephone numbers were not alleged to be in the possession of nor owned by the Defendant Pierre. Further, there is nothing in the record which this Court has reviewed which would indicate that the Defendant was intercepted on any of these target phones. The first two numbers, being (772) 323-9189 and (772) 323-3620, are alleged to have been in the possession of Todd Jackson, Jr., one of the named individuals of the Jackson drug trafficking organization. The third telephone number, (321) 795-3772 was alleged to be in the possession of Todd Jackson, Sr., another one of the alleged members of the Jackson drug trafficking organization. The final number, (786) 274-9114, was alleged to have been in the possession of Jean Polanco, another member of the organization who purportedly was the source of the cocaine hydrochloride along with this Defendant.

34.     This Court has reviewed all of the applications, affidavits and the orders entered in respect to these targeted phones. With the exception of the Polanco target

14

phone which order was entered by Judge Marra, the other three targeted wire intercept orders were entered by Judge Vaughn, State Circuit Judge in St. Lucie County.

35.    This Court disagrees with the Defendant's assertion that the applications and affidavits were "boilerplate recitations."   The applications and affidavits submitted in support of these wire intercept orders go through a detailed analysis of the investigation which had taken place up to the point in time when these various applications were submitted.  The applications allege that there was a conspiracy among several individuals, specifically including the individuals who were the targets of the investigation, using the target phones in the  trafficking of narcotics.  This would be an offense for which the issuance of a State wire intercept or a federal wire intercept would be justified.

36.    These various applications and affidavits name the individuals who are suspected of being involved in violation of Florida laws relating to narcotics trafficking at the time that the applications were being submitted to the State Circuit Judge.  These applications also set forth to the judges in question that the applicants believe that there were telephonic communications about narcotics trafficking taking place between individual members of this drug trafficking organization.  The applications and affidavits also stated that the listening post for these wire intercepts would at all times be within St. Lucie County, Florida.  Also the applications set forth that these were mobile/cellular phones which the members of the drug trafficking organization were utilizing in various places and were not in fixed locations.

37.    The affidavits and applications recited that the investigation began very recently on or about September 23, 2008. This Court finds that the information contained within these applications and affidavits is not stale as could be seen from the dates that the

15

applications were made in respect to the chronological order of the various acts the affidavits allege that the members of the drug trafficking organization were committing in furtherance of the applicants' attempt to establish probable cause in respect to each application. In each subsequent application, the investigative information was updated to provide the respective court with further evidence of the ongoing narcotics trafficking conspiracy.

38.     The applications also described interviews with sources of information who were familiar with the individuals who were the targets of this investigation and that these sources of information and confidential informants observed these targets  conducting narcotics transactions.  Specifically the investigation began with Todd Jackson, Jr. being the target with whom the sources of information and confidential informants had contact and observations in respect to Jackson, Jr.'s dealing in narcotics.  It was submitted in the affidavits by the applicants that the sources of information and confidential informants could not further infiltrate the organization any further to obtain information about higher level individuals within the drug trafficking organization.

39.     The applications and affidavits also referenced a June 18, 2009  seizure of $20,000 in Palm Bay, Florida, from Todd Jackson, Sr., another individual believed to be involved in the Jackson narcotics trafficking organization.  Further, three other confidential sources provided information concerning members of the Jackson drug trafficking organization, but could not identify any higher level individuals as referenced above. One of those confidential sources did provide information as set forth in the applications and affidavits that the source of the cocaine for the Jackson organization was in Fort

16

Lauderdale. This is alleged to be the Defendant, Frank Pierre, who is alleged to be the source of the cocaine hydrochloride for the Jacksons.

40.     The applications and affidavits also reference review of toll records from various telephones of Quentin Dixon in November of 2008 as well as intercepted calls on targeted telephones of Todd Jackson, Jr., Todd Jackson, Sr., and Quentin Dixon, on which discussions concerning narcotics trafficking were intercepted. During wire intercepts of telephone conversations involving the Dixon targeted telephone and Jackson, Sr. targeted telephone, the "boss" is referred to as Frank. The government submits that this is the Defendant who is alleged to be the source of the cocaine hydrochloride for the Jackson organization. This information is contained within the applications and affidavits for these various wire intercepts.

41.     In respect to the investigative techniques utilized or usually employed in such cases, the applications and affidavits do go through a litany of types of investigative techniques which were either used in this matter or which were not used. In respect to investigative techniques which were not used, there are detailed explanations by the affiants as to why these techniques would likely not be successful and/or were too dangerous to employ.

42.     The investigative techniques used are set forth in these applications and affidavits. They reference utilization of search warrants which resulted in a seizure of crack cocaine in Fort Pierce, Florida, from an individual believed to be associated with the Jackson organization and information from confidential informants identified some members of the drug trafficking organization by name. The applications and affidavits also assert that the Jackson organization is a "close knit group" and it would be difficult for

17

someone to infiltrate that organization to provide further identification of individuals involved without the use of a wire intercept. Further, surveillance was used on two houses in St. Lucie County and the affidavits indicate that surveillance was not able to identify all of the members of the criminal organization since they primarily conducted their business on cellular telephones.

43. More investigative techniques which were listed in the applications and affidavits include subpoenas. The affiants set forth why a subpoena would not identify all members of the organization, but would simply alert members that there was an investigation concerning their criminal activity. The same would be said of any possible interviews. The affiants set forth why interviews of individuals would only serve to alert members of the drug trafficking organization and would not provide any further investigative information concerning the drug trafficking organization. Pen registers were not used, but toll records of the telephones were analyzed to determine what telephones were being called on a more than normal basis. The analysis of phone records once again would not divulge the substance of any such conversations and that assertion was set forth in the applications and affidavits.

44. Further, the affidavits set forth the use of undercover officers in one controlled buy in October of 2008 by a CI and an undercover officer. The affidavit explained that it would be unlikely for an undercover officer to infiltrate the organization for the same reason that it would be difficult for a confidential informant to make such an infiltration of a close knit organization such as the Jackson organization. Finally, another investigative technique mentioned was trash pulls. However, it was explained in the affidavits that this investigative technique was not used because the homes of the targeted individuals were

18

in small communities where people loiter about all hours of the day and that the organization may utilize lookouts to alert the members of the drug trafficking organization.

45.     Specifically in respect to the Polanco targeted phone which was an order entered by Judge Marra, the application and affidavit goes through the prior applications which were submitted to the State Court. The application and affidavit before Judge Marra specifically gave excerpts from intercepted telephone calls from previous wire intercepts which detail conversations to indicate the Defendant Pierre was involved in drug trafficking and providing cocaine hydrochloride to members of the Jackson organization. These conversations were alleged to be in coded language which the government submits was being used to disguise whatever information that the Defendant Pierre was communicating to various other members of the narcotics trafficking conspiracy. Polanco is also specifically described in the application and affidavit as having conversations with the Defendant concerning narcotics trafficking to establish probable cause for the issuance of the wire intercept on the Polanco phone.

46.     Finally, as to the Polanco phone, the application once again goes through the alternative techniques which had been utilized by law enforcement or which they found had not been successful. There are detailed explanations concerning surveillance, telephone records, grand jury subpoenas, confidential informants/sources of information, interviews, consensual telephone conversations, search warrants, state wire taps, tracking devices, and trash pulls which were also recited in support of the State applications in respect to the phones of Jackson, Jr. and Jackson, Sr. referenced above. Also, there was a tracking device placed in a Ford vehicle believed to be titled in the Defendant's name. That vehicle was seized during an arrest on or about February 23, 2009, and the

19

investigators installed a tracking device at that time. The vehicle was then claimed from the impound area. However, the tracking of that vehicle did not provide any significant further investigative information to the agents. Additionally, in support of the Polanco wire intercept order, there was a discussion in the application concerning installation of pole cameras outside the Defendant's residence at 1711 N.E. 2nd Terrace in Pompano Beach, Florida, as well as at other of his properties on N.W. 9th Street in Pompano Beach, Florida and on N.E. 3rd Street in Pompano Beach, Florida. The government believed these to be stash houses or otherwise used to distribute cocaine. The application sets forth that these pole cameras have been of limited assistance to the investigators because they only show when people enter or leave the particular locations. The substance of any conversations which may be taking place at those locations is not able to be ascertained by use of these cameras alone.

## TARGET PHONES (772) 216-2796 and (954) 628-6710

47.    These two targeted telephones of Quentin Dixon are subject to the Defendant's argument since he purportedly was intercepted in conversations on those targeted telephones. Therefore, this Court finds the Defendant has standing in regards to challenging these applications and affidavits submitted in support of the applications. Both of these wire intercept orders were entered by Judge Vaughn, State Circuit Judge in Fort Pierce.

48.    The applications and affidavits are not "boilerplate recitations" as alleged by the Defendant. The results of the investigation contained within the affidavits submitted in support of the applications recite the same information as that set forth in the

20

applications for the Jackson, Jr. and Jackson, Sr. phones referenced above. The applications and supporting affidavits sufficiently set forth a reason for State Circuit Judge Vaughn to believe that a violation of the Florida narcotics laws was taking place and that wire intercepts were necessary. The investigative techniques utilized were the same as set forth in the applications for the Jackson, Jr. and Jackson, Sr. targeted phones referenced above. The same recitation of the specific and detailed techniques which had been utilized and the specific recitation of the investigative techniques which the agents believed would not be successful is set forth in these applications as well. The same information as recited by this Court previously in regards to the Jackson, Jr. and Jackson, Sr. targeted telephones is equally applicable here without this Court reciting it again.

49.     Based upon the detailed information set forth in the applications and affidavits in support of the wire intercepts for the Quentin Dixon targeted telephones it was readily apparent that Quentin Dixon was part of the Jackson drug trafficking organization and was utilizing these targeted telephones in furtherance of that activity.

## TARGET PHONE (772) 924-4408 ALLEGEDLY IN THE POSSESSION OF THE DEFENDANT FRANK PIERRE

50.     This Court will address this particular application separately since it is the only application and affidavit that the Defendant references in his motion and specifically attacks by date. The Defendant argues in his motion that this application and the accompanying order issued by State Circuit Judge Vaughn on or about January 23, 2009 not only did not contain sufficient probable cause, but exceeded the jurisdiction of the State Circuit Court sitting in St. Lucie County as part of the Nineteenth Judicial Circuit. A review

21

of that application specifically sets forth that there is a cellular telephone that the agents believed to be subscribed to a person by the name of "Frank Williams" but was in the possession of a person by the name of Frank Pierre. The application also gave the specific phone number, being (772) 924-4408, which would be within the area code for St. Lucie County. The application also stated that the telephone was normally located within the Nineteenth Judicial Circuit of Florida in the possession of Frank Pierre a/k/a Frank Williams at an unidentified address. The application advises Judge Vaughn that the billing address for the Defendant was unidentified and that the location of the phone cannot be ascertained due to the mobile nature of it. The application specifically advises Judge Vaughn that the affiants believe that the targeted mobile phone may be in various other places as yet unknown and may travel and be used by the Defendant and others to facilitate crimes.

51. As a result, the Defendant's argument that the agents willfully withheld information from Judge Vaughn to establish that the Defendant actually resided in Broward County with this telephone, is not substantiated by the record. In fact, Judge Vaughn's order entered in respect to this wire intercept lists the Defendant's residence in the heading of the order as 1711 N.E. 2nd Terrace, Pompano Beach, Broward County, Florida. There does not appear to be any false information or information withheld from Judge Vaughn or recklessly provided to Judge Vaughn which would negate any probable cause for the issuance of this particular wire intercept.

52. Once again, this particular application and affidavit goes through and names all of the alleged co-defendants and members of the Jackson narcotics trafficking organization. It specifically goes through a detailed analysis and recitation of the

22

investigative results as of the time that this was submitted to Judge Vaughn on January 23, 2009. Further, the same investigative techniques which were used or which the agents believed would not be successful and/or dangerous are set forth with particularity just as they were in regards to the applications and affidavits for the wire intercepts of the targeted phones of Jackson, Jr., Jackson, Sr. and Dixon analyzed above. This Court will not go through that detailed recitation again since this Court has already done so.

53.     This Court finds that Judge Vaughn did have the authority to issue the order and will more particularly discuss this later herein when the Court cites to the various case law which is applicable to the issues framed by the Defendant's motion. Further, in support of the application for this particular wire intercept on the Defendant's phone, (772) 924-4408, results of intercepted calls from the Jackson, Jr. and Dixon targeted telephones are set forth. Various excerpts from those intercepted telephone calls indicate that not only were Jackson, Sr., Jackson, Jr. and Dixon involved in the trafficking of narcotics, but that this individual who they call "Frank" was the source of the cocaine. These conversations took place all the way up to right before this application for this targeted telephone of the Defendant.

54.     This Court would point out in respect to the application for (772) 924-4408 and the later application on February 16, 2009 in regards to an extension/amendment as to the carrier in regards to this particular targeted phone, that paragraphs 39 through and including paragraph 44 of the application and affidavit appear to have typographical errors concerning the year. In reading these two applications it is very clear to this Court that the recitation of these intercepted phone calls is in chronological order beginning in paragraph 19 with an intercepted call on November 19, 2008. They progress chronologically through

23

November, December and January. However, it appears as though in paragraphs 39 through 44 inclusive, the year is incorrectly referred to as 2008 as opposed to 2009. This Court does not find that this typographical error is fatal in regards to the applications, affidavits and the subsequent orders issued by the Court. Based upon the totality of the affidavit, it is readily apparent that these recitations are in chronological order and are merely typographical errors which do not affect either probable cause or investigative techniques based upon the substance of the information contained within those respective paragraphs. This Court notes that neither the Defendant nor the government have even mentioned this previously in their pleadings.

## TARGETED PHONES (321) 482-2647, (954) 638-0679, AND (734) 274-7263 ALLEGEDLY IN THE POSSESSION OF THE DEFENDANT FRANK PIERRE

55. These applications and affidavits were submitted to U. S. District Court Judge Marra. This Court has reviewed each of these applications and accompanying affidavits. These are targeted phones allegedly in the possession of the Defendant and therefore he has standing to object to any of the orders entered in respect to these targeted telephones.

56. As this Court previously mentioned in regards to its analysis of the Polanco wire intercept, the same information is contained within these applications and affidavits submitted to Judge Marra. These applications presented to Judge Marra reference that the narcotics offenses which the affiants believe were taking place, did violate federal law and would be subject to the statute governing authorizing wire intercepts such as this. Further, the applications referenced the prior applications of wire intercepts issued by the State Circuit Court in respect to the investigation. Further, there is information contained

24

within the applications that Quentin Dixon was found in possession of three kilograms of cocaine hydrochloride and he identified the Defendant Frank Pierre as the source of that cocaine hydrochloride. Further, Dixon advised that he had been purchasing cocaine hydrochloride from the Defendant for some time.

57.     Once again, the same investigative techniques recited by the affiants in support of the applications before Judge Marra in respect to the Polanco phone referenced above were set forth in the applications for these additional three targeted telephones purportedly in the possession of the Defendant Frank Pierre. The affidavits also specifically describe details of intercepted conversations between the Defendant and other members of this drug trafficking organization wherein the Defendant was talking in coded language concerning narcotics trafficking.

## PROBABLE CAUSE

58.     In his motion, the Defendant in very general language argues that there was insufficient probable cause for entry of any of these wire intercept orders. Further, the Defendant argues that each of the subsequent wire intercept applications relied on tainted information from previous wire intercept orders. Therefore all of the orders are fruit of the poisonous and subject to being suppressed.

59.     This Court disagrees with the Defendant's analysis of these applications, affidavits and wire intercept orders. This Court finds that each of these applications and affidavits are very lengthy and very detailed in the information provided concerning the purported narcotics trafficking in the Fort Pierce Division of this Court by members of the

25

Jackson organization. There are more than sufficient facts set forth in the applications to believe that Jackson, Jr., Jackson, Sr., and Dixon were obtaining cocaine hydrochloride from the Defendant Pierre and Polanco for distribution in the Fort Pierce Division of this Court. Further, trafficking in narcotics is a violation of federal law and an offense for which a wire intercept is authorized under the applicable federal statute. Likewise, similar offenses under Florida law would have justified the issuance of the respective state wire intercept orders by Judge Vaughn.

60.    The applications and affidavits reviewed by this Court are not "bare-boned" and are not "boiler plate recitations." They are specifically detailed facts concerning various members of this drug trafficking organization, the alleged involvement of these individuals in specific aspects of the drug trafficking organization, and the fact that cellular telephones were being utilized by these individuals in the course of conducting this narcotics trafficking. Further, the investigative techniques which had been utilized were set forth in these applications and affidavits with the results which had been obtained up to the date of any particular application. Additionally, the affiants also set forth other investigative techniques which had not been used and gave specific reasons as to why they believed that those investigative techniques would either not be likely to produce the information needed and/or were dangerous to the individuals involved in this investigation.

61.    An application for a wiretap authorization must be supported by the same probable cause necessary for a search warrant. United States v. Nixon, 918 F.2d 895 (11th Cir. 1990). The applications and affidavits submitted in support of orders in respect to each of the targeted telephones set forth detailed facts which this Court finds were sufficient to establish probable cause that there were violations of the narcotics laws of the

State of Florida and of the United States of America being committed by the individuals who were targets of the pending investigation and that they were using cellular telephones to conduct this illegal activity. Further, the applications and affidavits set forth sufficient facts to establish probable cause that these wire intercepts would further link these particular individuals, including the Defendant, to the narcotics trafficking of the Jackson organization in the Fort Pierce Division of this Court. United States v. Gonzalez-Perez, 283 Fed. Appx. 716 (11th Cir. 2008).

## NECESSITY

62. Necessity goes hand-in-hand with probable cause. However, simply because one has probable cause to believe that these individuals involved in this investigation were in fact currently violating both state and federal laws concerning narcotics trafficking, would not be sufficient in and of itself to justify issuance of a wire intercept. The "necessity" requirement of the wiretap statute is designed to insure that electronic surveillance is neither routinely employed nor used when less intrusive techniques will succeed. United States v. Olmedo, 552 F.Supp.2d 1347 (S.D. Fla. 2008). The applications and affidavits submitted by the affiants in support of each of the wire intercept orders referenced herein set forth specifically what investigative techniques had been employed and the results obtained therefrom. Additionally, there was specificity by the affiants in what investigative techniques had not been employed and reasons why it was believed by the affiants that those investigative techniques either would not be likely to succeed in providing information to further the investigation and/or were too dangerous to employ. This Court finds that the recitation by the affiants in each of these applications and affidavits meets the statutory

27

requirements regarding necessity for wiretaps. See Olmedo, supra. and United States v. Allen, 274 Fed. Appx. 811 (11th Cir. 2008). Further, the affidavits submitted in support of such applications need not show a comprehensive exhaustion of all possible techniques, but need explain only the failure of those techniques that reasonably suggest themselves. United States v. Van Horn, 789 F.2d 1492 (11th Cir. 1986) and Gonzalez-Perez, supra.

## STATE CIRCUIT JUDGE VAUGHN'S AUTHORITY TO ISSUE JANUARY 23, 2009 WIRE INTERCEPT

63.    The Defendant also argues that Judge Vaughn did not have the authority to issue his January 23, 2009 wire intercept for the Defendant's phone which was in Broward County. Broward County is in the Seventeenth Judicial Circuit of this State while Judge Vaughn is a Circuit Judge in the Nineteenth Judicial Circuit of the State of Florida. However, this Court does not agree with the Defendant's restrictive interpretation of Florida Statute Chapter 934 in respect to issuance of wire intercept orders. In State v. McCormick, 719 So.2d 1220 (5th DCA 1998), the Florida District Court of Appeals found that the interception of a cellular telephone call, such as in this case, occurs both at the location of the tapped telephone and at the site where law enforcement authorities hear and record the call. The applications filed in this particular matter all reflect that the listening post for these wire intercepts would be located at all times within the Nineteenth Judicial Circuit of Florida in St. Lucie County. Further, the wire intercept order issued on January 23, 2009 for the Defendant's telephone was for a targeted telephone with the area code (772) which is only located within the Nineteenth Judicial Circuit of Florida. Further, as previously referenced by this Court the application went on to advise Judge Vaughn that based upon

28

a review of toll records, the targeted phone was utilizing cellular telephone towers in Orange County, Palm Beach County and St. Lucie County and obviously mobile. Further, the application and affidavit advised Judge Vaughn that the exact billing location for this telephone or its exact physical location could not be ascertained. However, the application did state that it was believed that the phone was within the Nineteenth Judicial Circuit. This Court finds this belief to be reasonable based upon the area code and cell tower information gathered during the investigation.

64.     The Fifth District Court of Appeals in McCormick stated that a wiretap authorization order was not over broad merely because it lacked an address for the cellular telephone subscribers since the order sufficiently identified the mobile cellular telephone by its telephone number. In this case, while the application did not set forth the Defendant's address in Pompano Beach, Florida, the order entered by Judge Vaughn does specifically list that address. Therefore, this Court cannot accept any argument from the Defendant that Judge Vaughn may have been misled in that regard.

65.     This Court cannot find any cases which overrule or otherwise modify the holding of the Fifth District Court of Appeals in McCormick regarding to the mobility of cellular phones and the legitimacy of any wiretap orders entered in respect to such mobile calling devices. In United States v. Rodriguez, 968 F.2d 130 (2nd Cir. 1992), the Second Circuit Court of Appeals addressed a very similar issue. The Second Circuit Court of Appeals found that a federal court sitting in a jurisdiction in which the telephone to be tapped is located has the authority to issue the wiretap order as does the District Court for the jurisdiction to which the interceptions are to be directed. The Court went on to state that where authorities seek to tap telephones in more than one jurisdiction and monitor

29

them in a single jurisdiction, there are sound policy reasons for permitting a court in the jurisdiction where all of the captured conversations are to be heard to grant the authorization. In <u>Rodriguez</u>, the telephones were located in the State of New Jersey and were actually being listened to by agents in the State of New York. The <u>Rodriguez</u> court found that the federal court had the authority to issue wiretap orders even if they were orders involving the tapping of phones outside their jurisdiction.

66.     This is almost identical to the situation we have here. In this case, Judge Vaughn issued the order authorizing the interception of a mobile cellular telephone with a prefix of an area code within the Nineteenth Judicial Circuit of Florida. He was advised in the application and affidavit that the phone was mobile in nature, used various cell phone towers inside and outside the Nineteenth Judicial Circuit, that there was no known specific location where the phone could be found and that it was believed to be located within the Nineteenth Judicial Circuit of Florida. This Court finds no intentional violation of any of the provisions of Florida Statute Chapter 934 in respect to issuance of that order for the mobile cellular telephone in question being utilized by the Defendant. Further, the Defendant points to no provision of Florida law or of the Florida statute in question which nullifies Judge Vaughn's order. Therefore, this Court finds that the Defendant's argument is without basis in that regard.

## **GOOD FAITH EXCEPTION**

67.     The Supreme Court has recognized in <u>United States v. Leon</u>, 468 U.S. 897 (1984) a good faith exception which governs search warrants and wire intercept orders. This good faith exception to the exclusionary rule first makes an inquiry as to whether or

not the alleged offending officers acted in the objectively reasonable belief that their conduct did not violate the provisions of the Fourth Amendment of the United States Constitution. The court went on to note that the purpose of the exclusionary rule is to deter unlawful police conduct and that evidence should only be suppressed if it can be said that the law enforcement officers in question had knowledge or may properly be charged with knowledge that such a search pursuant to a search warrant or order of wire intercept was unconstitutional under the Fourth Amendment. See also United States v. Malekzadeh, 855 F.2d 1492 (11th Cir. 1988). This Court finds no reason why any of the wire intercept orders entered by State Circuit Judge Vaughn or by U. S. District Judge Marra were invalid for any purpose. Nevertheless, as an alternative, should the District Court disagree, this Court finds that the Leon good faith exception would be applicable. Even if any of these orders are infirm for any reason whatsoever, there is no suggestion nor argument made by the Defendant in his motion that the officers unreasonably relied upon these orders in furtherance of the wiretaps and interception of certain oral communications permitted by those orders. This Court mentions this only as an alternative since it was argued by the government in its response.

**ACCORDINGLY**, this Court recommends to the District Court that the Defendant's Motion To Suppress Evidence Derived From Illegal Electronic Surveillance [D.E. #184] and the Supplement To Motion To Suppress Evidence Derived From Illegal Electronic Surveillance [D.E. #285] be **DENIED**.

The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable K. Michael Moore, the United States District Judge assigned to this case.

**DONE AND SUBMITTED** this ___11TH___ day of January, 2010, at Fort Pierce, Northern Division of the Southern District of Florida.

FRANK J. LYNCH, JR.
UNITED STATES MAGISTRATE JUDGE

Copies furnished:
Hon. K. Michael Moore
AUSA Jennifer C. Millien
Fred Haddad, Esq.