UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-14007-CR-MOORE/LYNCH(s)(s)(s)(s)

UNITED STATES OF AMERICA,

      Plaintiff,

v.

FRANK PIERRE,

      Defendant.

_____/

FILED by _____ D.C.

JAN 1 2 2010

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. PIERCE

REPORT AND RECOMMENDATION ON DEFENDANT'S
MOTION TO QUASH SEARCH WARRANT AND SUPPRESS [D.E. #181]
AND SUPPLEMENT TO MOTION TO QUASH SEARCH WARRANT [D.E. #284]

**THIS CAUSE** having come on to be heard upon the aforementioned motion and the supplement thereto and this Court having reviewed the motion, the supplement, the government's response and the Defendant's reply, makes the following recommendation to the District Court:

1.    The Defendant has filed a Motion To Quash Search Warrant concerning the search of his residence located at 1711 N.E. 2ⁿᵈ Terrace, Pompano Beach, Florida. He has also filed a supplement in respect to that motion. This Court will refer to those two documents together as the motion.

2.    The motion seeks to have quashed the search warrant issued by this Court on May 22, 2009 for the aforementioned residence located in Pompano Beach, Florida. The Defendant's motion alleges that the application and affidavit submitted in respect to the search warrant failed to set forth probable cause sufficient for the issuance of the search warrant. Additionally, the motion attacks the warrant for staleness. It alleges that any purchases from the subject residence were prior to 2008 and would be too stale to serve as a basis for the issuance of a search warrant. The Defendant argues that it is a "blanket" affidavit.

3.     Factually, the Defendant's motion is very general in nature and does not point to any specific allegations of deliberate falsehoods or reckless disregard for the truth in respect to any allegations made by the affiants in support of the application for this search warrant.  The Defendant merely alleges in conclusory fashion that there is insufficient probable cause set within the four corners of the application and affidavit.

4.     The Defendant also makes a "fruit of the poisonous tree" argument alleging that evidence from wiretaps in this case were utilized as some of the factual basis for issuance of this search warrant.  The Defendant argues that the wiretaps should be suppressed and therefore any evidence resulting therefrom and utilized in furtherance of issuance of this search warrant, would taint this search warrant.  This Court has previously issued its Report and Recommendation in regards to the Defendant's Motion To Suppress Electronic Surveillance/Wiretaps.  This Court's Report and Recommendation recommends to the District Court that those motions be denied.  Therefore, this Court finds that the Defendant's "fruit of the poisonous tree" argument has no basis in fact or law in respect to this particular motion. This Court will instead concern itself with the allegations and facts set forth within the application and affidavit to determine if they meet the probable cause standard and the applicable case law as now challenged by the Defendant's motion.

5.     The government's response alleges that there were several telephone calls intercepted between the Defendant and his co-conspirators which reflect that the Defendant was utilizing this particular house for distribution of cocaine hydrochloride.  The government also asserts that the Defendant was the source of cocaine for the Jackson organization which was purportedly operating in this area and distributing cocaine obtained from the

Defendant residing at the real property which was the subject of this search warrant. Further, the government points to co-defendant Dixon's post-arrest statement made in January 2009 subsequent to the seizure of three kilograms of cocaine hydrochloride. Dixon told law enforcement that the Defendant was the source of that cocaine hydrochloride and was the source of cocaine for the Jackson organization for one to two years.  Dixon informed law enforcement that the Defendant sold kilogram quantities of cocaine to him on several occasions during that period of time and that the sales took place at the residence located at 1711 N.E. 2nd Terrace, Pompano Beach, Florida, which is the subject of the search warrant issued in this matter.

6.      The government's response also asserts that the information contained within the affidavit and application is not stale if it is updated and corroborated.  The government argues that information received from Dixon revealed that he had been buying cocaine for over one to two years prior to his arrest in January of 2009.  The government cites for example that Dixon bought three kilograms from the Defendant on or about January 26, 2009, which was the cocaine seized by agents pursuant to a search warrant at a residence in Fort Pierce where Dixon was located, which is referenced in the previous paragraph. Dixon also advised that he had purchased four kilograms of cocaine hydrochloride in December of 2008 from the Defendant as well.

7.      The government points out that the affidavit submitted in support of the application for search warrant in this matter also set forth facts sufficient for this Court to establish that intercepted phone calls on the court ordered wiretaps overheard the Defendant directing persons to pick up kilogram quantities of cocaine hydrochloride from

his home which is the subject matter of this search warrant and to deliver money in respect to that cocaine to that same residence.

8.    The Defendant's motion makes an argument concerning a robbery/burglary which took place at the Defendant's residence which is the subject of this search warrant and that alleges the agents on surveillance watched the robbery/burglary take place.  The government's response established that the agents did not observe such a robbery/burglary and were only advised subsequently after the burglary was reported. The government points out that agents had this residence under surveillance by remote cameras and were not actively monitoring them at the time this robbery/burglary purportedly took place.  Therefore, the government argues that there is no basis for alleging that law enforcement watched and allowed the burglary to happen.

9.    The Defendant in his reply appears to accept that explanation and apologizes for misinterpreting the information provided to him from the Defendant and in discovery. Thus, counsel for the Defendant erroneously believed that the agents had the Defendant's residence under surveillance and observed the robbery/burglary take place.  Counsel for the Defendant admits this error and misinterpretation.  The Defendant's reply in respect to this motion states that a clear reading of the information does now reflect that the house was under surveillance through remote cameras placed outside the Defendant's residence which were not being monitored at the time to detect any burglary or robbery.  Therefore, this argument made by the Defendant has no bearing whatsoever on this Court's analysis. The Defendant's reply to the government's response does not add anything which was not already stated in respect to his original motion.

4

## ANALYSIS

10.     The Defendant is not entitled to an evidentiary hearing in regards to this motion.  In order to be entitled to such a hearing, the Defendant must allege specific facts concerning deliberate falsehoods or reckless disregard for the truth in regards to the affidavit submitted in support of the application for the search warrant issued by this Court in this case.  The affidavit is presumed to be valid under the applicable case law.  The Defendant must support any allegations of deliberate falsehood or reckless disregard for the truth with specificity and point to portions of the subject affidavit which he claims to be false.  The Defendant does not do so whatsoever.  There are no such citations, proffers or allegations.  As a result, the Defendant is not entitled to an evidentiary hearing under the applicable case law. This Court will rule upon the motion based upon the pleadings as they are presently framed.   Franks v. Delaware, 438 U.S. 154 (1978), United States v. Kapordelis, 569 F.3d 1291 (11th Cir. 2009). and United States v. Abbell, 963 F.Supp. 1178 (S. D. Fla. 1997).

11.     This Court has reviewed the twenty-seven page affidavit submitted in support of the application for search warrant for the Defendant's residence located at 1711 N.E. 2nd Terrace, Pompano Beach, Florida.  This is not a "blanket affidavit" as alleged by the Defendant.  The affidavit sets forth specific details of the investigation beginning in November of 2008 in respect to the Jackson narcotics trafficking organization in this area. The affidavit details the intercepted phone calls and other investigative techniques utilized. The investigation revealed that the Jackson organization was purchasing its cocaine hydrochloride from an individual in Broward County later identified to be this Defendant, Frank Pierre.  Seizure of three kilograms of cocaine on January 26, 2009 pursuant to a

search warrant at a residence in St. Lucie County, Florida, resulted in the arrest of Quentin Dixon, one of the co-conspirators. In a post-<u>Miranda</u> statement, Dixon advised that the cocaine seized had just been purchased from the Defendant Frank Pierre and that he had been purchasing kilogram quantities of cocaine hydrochloride from the Defendant for the last one to two years. Dixon stated he would then bring that cocaine back to this area for distribution in smaller amounts. Dixon also went on to advise law enforcement that on a number of occasions prior to December 2008, he purchased cocaine directly from the Defendant at 1711 N.E. 2nd Terrace, Pompano Beach, Florida, which is the Defendant's residence and the subject of this search warrant.

12.    Between January 26 and February 23, 2009, the Defendant was intercepted on court ordered wiretaps discussing cocaine that he had available for sale and making arrangements for the sale of the cocaine. Later intercepted phone calls between March 12 and March 16, 2009, reflect the Defendant being heard directing people to his residence, which is the subject property involved in this search warrant, to come pick up kilogram quantities of cocaine from that residence.

13.    There was law enforcement surveillance of two other real properties located in Broward County and owned by the Defendant which the government submits were stash houses. The affidavit alleges that individuals believed to be involved in narcotics trafficking were seen going and coming from those various locations. Those locations are not the subject of the instant motion and this Court will not review any information concerning those other real properties.

14.    The affidavit also goes on to discuss information received from a cooperating defendant (CD) in April of 2009. This individual was familiar with co-defendant Polanco and

had established a relationship with him over the last couple of years.  The CD stated that based upon his contact with Polanco, that Polanco was actually the Defendant's source for the cocaine hydrochloride.  The affidavit describes in detail how Polanco would obtain the cocaine from outside the United States, bring it here and then was one of the Defendant's sources of cocaine hydrochloride.  The affidavit then alleges that the Defendant then distributed that cocaine to other individuals, including the Jackson organization which was the original target of this investigation.

15.     The affidavit also identifies the subject residence of 1711 N.E. 2nd Terrace, Pompano Beach, Florida as being owned by the Defendant and where he resided with his wife. Also, various cellular telephones which were subjects of court ordered wiretaps were subscribed to the Defendant with that address as the billing address.

16.     This Court is not going to review each and every allegation in the twenty-seven page affidavit.  It is readily available for the District Court to review should it be necessary. It is sufficient for this Court's purposes to review the matters set forth within the four corners of the affidavit and the application to determine if there was probable cause for the issuance of the search warrant by this Court.  Probable cause to support the issuance of a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location.  Probable cause is a fluid concept which involves an assessment of probabilities in each particular factual situation.  United States v. Jackson, 215 Fed. Appx. 918 (11th Cir. 2007).  This Court finds that there is more than sufficient evidence and facts set forth within the affidavit submitted in support of the application to establish that this residence was occupied by the Defendant and his wife as their primary residence and was being utilized by the Defendant as one of

three locations in Broward County from which he was distributing cocaine hydrochloride. Co-conspirators and other individuals, including this Defendant, were overheard on intercepted wiretaps discussing distribution of cocaine and receipt of monies for cocaine from this particular residence.

17.     The Defendant's argument concerning the staleness of the information contained within the affidavit has no factual or legal basis either.   One of the co-conspirators, being Dixon, told agents that he had purchased cocaine hydrochloride from the Defendant at this residence previous to December 2008.  This was in a post-Miranda statement when Dixon was arrested in late January 2009 during the seizure of three kilograms of cocaine hydrochloride which Dixon said he had just purchased from the Defendant at this residence.  Subsequent thereto, other investigative techniques including wiretaps, revealed an ongoing distribution of cocaine hydrochloride by the Defendant utilizing this residence and other real property located in Broward County, Florida. Staleness is an issue which must be decided on the particular facts of each case considering the length of time between the time the information was obtained and the time that the warrant was executed, the nature of the suspected crime, the habits of the accused, the character of the items sought and the nature and function of the premises to be searched. United States v. Bervaldi, 226 F.3d 1256 (11th Cir. 2000).

18.     In this case, there was an ongoing conspiracy as alleged in the affidavit.  This conspiracy involved the trafficking in cocaine hydrochloride in kilogram quantities.  The allegations were that from before December 2008 through January of 2009, Dixon had purchased kilogram quantity amounts of cocaine hydrochloride from the Defendant at this residence.  Further, subsequent wiretaps in the months after Dixon's January 2009 arrest

corroborated the fact that the Defendant was continuing to use this residence to distribute cocaine hydrochloride to the Jackson organization and others. The search warrant in this case was issued on May 22, 2009 and executed on or about May 26, 2009. This is within five months of when Dixon advised law enforcement that the three kilograms of cocaine seized from him at the end of January 2009 were just purchased from the Defendant at this residence.

19.     Not only does this Court find the information is not stale, but that it was updated and corroborated by subsequent investigative techniques, including intercepted conversations from various wiretaps. Even if it was found to be stale information by the District Court, this would not be fatal when such information is updated, substantiated and/or corroborated by subsequent information. United States v. Moghaddam, 2008 WL 4540415 (S.D. Fla. 2008).

20.     In United States v. Harris, 20 F.3d 445 (11th Cir. 1994), information of an ongoing conspiracy that went back two years was found not to be stale because the affidavit included further information from recent surveillance of the defendant and updated the earlier information which had been obtained through the investigation previously. If an affidavit recites activity which indicates a protracted or continuous conduct, time is of less significance. See United States v. Deering, 296 Fed. Appx. 894 (11th Cir. 2008).

21.     In this case, the totality of the affidavit and the information contained therein shows that the facts alleged were updated and corroborated by other sources. This Court finds that the affidavit and application set forth sufficient probable cause and are not stale. The task of this Court in issuing such a search warrant is to make a practical, common sense decision whether given all the circumstances set forth in the affidavit, including the

veracity and basis of knowledge of persons supplying information, that there is a fair probability that contraband or evidence of a crime would be found in a particular place. Illinois v. Gates, 462 U.S. 213 (1983) and Deering, supra. This Court finds that there was such probable cause in respect to this search warrant.

22.    The government argues alternatively that the Leon exception would be applicable herein should the Court find that the search warrant was in some way defective. The exclusionary rule under the Fourth Amendment should not bar the use of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a court, but ultimately found to be unsupported by probable cause. United States v. Leon, 468 U.S. 897 (1984).  The purpose of the exclusionary rule is to deter unlawful police misconduct and when the officers act in an objectively reasonable manner and act in good faith in reliance on such a search warrant, the good faith exception should apply.  United States v. McGough, 412 F.3d 1232 (11th Cir. 2005). See also United States v. Bryant, 334 Fed. Appx. 259 (11th Cir. 2009).  In the event that the District Court disagrees with this Court's analysis and finds some defect in the search warrant in question, this Court finds that the exclusionary rule would not justify suppression of the evidence in this matter pursuant to the Leon good faith exception. There is no indication that the agents acted unreasonably in relying upon the search warrant, executing the warrant and seizing evidence from the Defendant's residence.

23.    Based upon all of the foregoing, this Court finds that the totality of the lengthy affidavit and detailed investigative techniques utilized by the agents in this matter gave this Court sufficient reason to believe that there would be evidence of  cocaine distribution/sale found at 1711 N.E. 2nd Terrace, Pompano Beach, Florida, which was being occupied by the

Defendant and his wife as their primary residence.  The evidence was corroborated, updated and therefore not stale.

**ACCORDINGLY**, this Court recommends to the District Court that the Motion To Quash Search Warrant And Suppress [D.E. #181] and Supplement To Motion To Quash Search Warrant [D.E. #284]  be **DENIED**.

The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable K. Michael Moore, the United States District Judge assigned to this case.

**DONE AND SUBMITTED** this ___/2th___ day of January, 2010, at Fort Pierce, Northern Division of the Southern District of Florida.

FRANK J. LYNCH, JR.
UNITED STATES MAGISTRATE JUDGE

Copies furnished:
Hon. K. Michael Moore
AUSA Jennifer C. Millien
Fred Haddad, Esq.